**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | Case No. 25-10742 MER |
| Tyler J. Moody | Chapter 7 |
| Debtor. | |
| All Terrain Ponds and Sprinklers, LLC, d/b/a All Terrain Landscaping | Adversary No. 25-01129 MER |
| Plaintiff, | |
| v. | |
| Tyler J. Moody, d/b/a TyBuild Custom Construction Innovations | |
| Defendant. | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on the Motion for Summary Judgment ("**Motion**") filed by Plaintiff All Terrain Ponds and Sprinklers, LLC ("**All Terrain**") and the Supplement thereto.[1]  There were no objections or responses to the Motion.

**BACKGROUND**

The following facts are undisputed.  All Terrain is a professional landscaping company.  On January 9, 2023, All Terrain entered into a Master Subcontractor Agreement ("**Agreement**") with TyBuild Custom Construction Innovations ("**TyBuild**").  TyBuild is the trade name of the Debtor/Defendant Tyler J. Moody ("**Moody**") (collectively with TyBuild, the "**Moody Parties**") and is solely owned and operated by Moody.  Per the Agreement, the Moody Parties agreed to perform work as a subcontractor for All Terrain.

On June 5, 2023, the Moody Parties began work for All Terrain on a project known as the Lehigh Project.  The Lehigh Project required the Moody Parties to, among other things, demolish an existing deck and install a new one.  The Moody Parties submitted a bid for the project in the amount of $27,784.00.  The bid included a $22,563.90 down payment, which All Terrain paid.  After the Moody Parties completed

---

[1] ECF Nos. 15 & 18.

1

work on the Lehigh Project, All Terrain found the work was substandard, incomplete, and unacceptable.  As a result, All Terrain was forced to retain another contractor and to fix the Moody Parties' work.

Around the same time as the Lehigh Project and before All Terrain was aware of the substandard work, All Terrain also retained the Moody Parties to perform work on a project known as the RPT Project.  All Terrain advanced the Moody Parties $13,855.60 for the RPT Project, plus an additional $1,500 for permits.  However, the Moody Parties failed to obtain the necessary permits, and All Terrain was forced to reduce the scope of the work for the RPT Project.  As such, All Terrain canceled the Moody Parties' work on the project.  However, the Moody Parties refused to return the $13,855.60 advanced for the RPT Project, the $1,500 for permits, or the $22,563.90 for the Lehigh Project.  All Terrain made several attempts to contact the Moody Parties about the funds, but was ultimately unsuccessful.  As a result, All Terrain sent the Moody Parties a Notice of Contract Breach and Intent to Terminate, demanding, among other things, that the Moody Parties return all unearned funds advanced for the projects.  The Moody Parties failed to return any of the funds.

Eventually, All Terrain commenced litigation against the Moody Parties in the Weld County District Court ("**State Court**"), asserting claims for breach of contract and civil theft of the funds from the Lehigh and RPT Projects, as well as the permit fees ("**State Court Case**").[2]  On September 10, 2024, the State Court entered its order granting All Terrain's motion for summary judgment ("**Summary Judgment Order**").[3]  Per the Summary Judgment Order, the State Court found All Terrain had proven its breach of contract claim as well as its civil theft claim with respect to the RPT Project funds.  However, the State Court determined All Terrain had not met its burden to prove its civil theft claim with respect to the funds from the Lehigh Project or the permit fees.  As a result, the State Court entered a judgment in favor of All Terrain and against the Moody Parties in the total principal amount of $127,525.05 ("**State Court Judgment**").

All Terrain commenced the instant adversary proceeding on April 14, 2025, seeking a determination the debts owed to it by Moody are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).  All Terrain filed the instant Motion on October 8, 2025.  The Court had several issues with the Motion, including that All Terrain appeared to seek more damages than were awarded in the State Court Judgment.  In particular, it appeared All Terrain was seeking to recover the $22,563.90 advanced for the Lehigh Project and the $1,500 for the permits.  However, the State Court already found that All Terrain had not proven its entitlement to those damages.[4]  As a result, the Court ordered All Terrain to file a supplement addressing the preclusive effect of the findings in the Summary Judgment Order and State Court Judgment, as

---

[2] Case No. 2023CV30929.

[3] ECF No. 15, Ex. D, September 10, 2024, Order Granting Plaintiff's Motion for Summary Judgment.

[4] All Terrain also requested such damages be trebled.

2

well as why it is entitled to more damages than the State Court originally awarded.[5]  All Terrain filed its Supplement on February 3, 2026, advising the Court it no longer intends to seek the damages related to the Lehigh Project and permit fees.  Therefore, All Terrain only seeks the $127,525.05 awarded for the breach of contract claim and theft of the RPT Project funds.

## ANALYSIS

### A.    Applicable Standard

Pursuant to Fed. R. Civ. P. 56(c) (incorporated by Fed. R. Bankr. P. 7056), a court may award summary judgment only when there are no disputes as to any material fact and the movant is entitled to judgment as a matter of law.[6]  In applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party.[7]  The movant bears the burden of demonstrating there is no genuine issue of material fact.[8]  If the moving party makes a prima facie case, the burden shifts to the non-moving party to set forth specific facts demonstrated by evidence, "from which a rational trier of fact" could find in its favor.[9] "Great circumspection is required where summary judgment is sought on an issue involving state of mind."[10]  If the nonmoving party fails to timely respond to the summary judgment motion, they waive the right to respond or to controvert the facts asserted.[11] "The court should accept as true all material facts asserted and properly supported in the summary judgment motion.  But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment."[12]

### B.    Collateral Estoppel

The Court will first address the preclusive effect the Summary Judgment Order and State Court Judgment have on this proceeding.  The doctrine of collateral estoppel

---

[5] ECF No. 16.

[6] *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[7] *Schwartz v. Bd. Of Maint. of Way Emp.*, 264 F.3d 1181, 1183 (10th Cir. 2001).

[8] *Sports Unlimited Inc. v. Lankford Enter., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002).

[9] *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000).

[10] *In re Tilly*, 286 B.R. 782, 792 (Bankr. D. Colo. 2002); *Gelb v. Board of Elections of City of New York*, 224 F.3d 149, 157 (2nd Cir. 2000) (summary judgment is generally inappropriate where there are issues of intent).

[11] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

[12] *Id.* (citing *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001); *Anchorage Assoc. v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 175-76 (3d Cir. 1990); *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir. 1988)); Fed. R. Civ. P. 56(e)(2).

3

applies to dischargeability actions.[13]  When the elements of a prior claim are identical to the elements required to establish an exception to discharge, it is appropriate for the Court to give collateral estoppel effect to those elements that were "actually litigated and determined in the prior action."[14]  Therefore, summary judgment on a § 523 claim may be granted based on a prior state court judgment "provided the prior judgment establishes all elements necessary to determine non-dischargeability under the Bankruptcy Code."[15]

When a federal court considers the preclusive effect of a state court judgment under the collateral estoppel doctrine, it looks to the preclusion law of the state in which the judgment was entered.[16]  Since All Terrain obtained the State Court Judgment in Colorado, Colorado's preclusion law applies.  Under Colorado law, collateral estoppel bars relitigation of an issue if: (1) the issue to be precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.[17]  The party seeking preclusion bears the burden of establishing each  element of collateral estoppel.[18]

Here, the second, third, and fourth elements are not in dispute.  All Terrain and Moody were parties to the State Court Case along with TyBuild.  The State Court entered a final judgment, and Moody does not dispute that he received a full and fair opportunity to litigate the State Court Case.  However, the first element, whether the issues to be precluded in this proceeding are identical to the issues actually litigated in the State Court Case, must be addressed.

To meet the first element of collateral estoppel, an issue must have been "actually litigated" and "necessarily adjudicated."  To be actually litigated, an issue must have been raised by a party through an appropriate pleading, or tried with the consent of the parties, submitted to  a prior tribunal for determination, and it must be identical to the issue that was actually and necessarily decided at a prior proceeding.[19]  To be

---

[13] *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

[14] *Id*. at 284.

[15] *Federal Trade Comm'n v. Abeyta (In re Abeyta)*, 387 B.R. 846, 851-52 (Bankr. D.N.M. 2008). Any use of the term "Section" or "§" hereafter means Title 11 of the United States Code unless otherwise stated.

[16] *Hill v. Putvin (In re Putvin),* 332 B.R. 619, 625 (10th Cir. BAP 2005).

[17] *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999).

[18] *Id.*at 85*.

[19] *Id.* at 86; *see Michaelson v. Michaelson*, 884 P.2d 695, 702 (Colo. 1994).

"necessarily adjudicated," a determination on that issue must have been necessary to the judgment entered.[20]  Both prongs must be satisfied for collateral estoppel to apply.[21]

### 1.    Section 523(a)(4)

The first claim the Court will address is All Terrain's claim under § 523(a)(4), which is premised on the State Court's finding of civil theft.  A debt may be declared non-dischargeable under § 523(a)(4) if the debt at issue results from a debtor's embezzlement or larceny.[22]  "Larceny is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property.  For purposes of § 523(a)(4), larceny requires that the initial appropriation be wrongful.[23]  Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[24]  "The main difference between larceny and embezzlement is that with embezzlement, the debtor initially acquires the property lawfully, whereas larceny requires that the funds originally come into the debtor's hands unlawfully."[25]  State court judgments for theft, including embezzlement, generally have preclusive effect when determining whether such debts are nondischargeable under § 523(a)(4).[26]

Here, the State Court's findings match those necessary to find the debts owed to All Terrain are nondischargeable under § 523(a)(4) due to embezzlement.  Indeed, the RPT Project funds came into Moody's possession lawfully because All Terrain advanced them to Moody for the project.[27]  After Moody's work on the project was canceled, he "improperly" and "illegally" withheld these funds from All Terrain.[28]  Moody committed civil theft by continuing to control these funds and knowingly using them after

---

[20] *Id.*

[21] *Id.*

[22]  *In re Dorado*, 400 B.R. 304, 309 (Bankr. D.N.M. 2008).

[23] *Id.* at 309-10 (internal quotations omitted).

[24] *Id.* at 310.

[25] *Id.* (internal quotations omitted.)

[26] *Hauck v. Hauck (In re Hauck)*, 466 B.R. 151, 165-66 (Bankr. D. Colo. 2012) ("Colorado law has merged larceny, stealing, embezzlement, false pretenses, confidence games, and shoplifting as theft . . . Several courts have concluded that, where the crimes of embezzlement, conversion and larceny are consolidated into a single theft statute and the statutory offense of theft is consistent with the federal definition of embezzlement or larceny, issue preclusion may be utilized to except a debt for such offense.")

[27] ECF No. 15, Ex. D.

[28] *Id.*

he was no longer authorized to do so.[29]  Based on these findings, the Summary Judgment Order has a preclusive effect on All Terrain's § 523(a)(4) claim.

### 2.    Section 523(a)(6)

Next, the Court will address All Terrain's claim for willful and malicious injury pursuant to § 523(a)(6), which is also premised on the State Court's finding of civil theft. To prevail on a § 523(a)(6) claim, a party must prove: (1) an intentional act by the defendant; (2) done with the intent to harm; (3) which causes damages to the plaintiff; and (4) the injury is the proximate result of the action by the defendant.[30]  The first element requires proof of a willful act.  Willfulness "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[31]  Courts have recognized two ways of establishing willful conduct.  The Debtor must either "desire to cause the consequences of his act or believe the consequences are substantially certain to result from it."[32]  The latter "substantial certainty" test is not an objective test.[33]  Instead, willfulness under both standards is a wholly subjective test dependent on the debtor's state of mind.[34]  The second element refers to proof of a malicious injury, distinct from willfulness.  Malicious injury requires evidence of the debtor's motives.  To be malicious, the debtor must have "acted with a culpable state of mind vis-à-vis the actual injury caused to the creditor.[35]  The debtor's action must be "wrongful and without just cause or excuse."[36]  An act may be malicious if taken "in conscious disregard of one's duties and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."[37]  "[A]ll the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind."  Both the first and second elements require proof of the debtor's intent.  Other divisions of this Court have held that a state court judgment for civil theft has a preclusive effect on a § 523(a)(6) claim because the intent elements required to prove a theft claim in Colorado are the same as the "willful" and "malicious" elements

---

[29] *Id.*

[30] *Trans-West v. Mullins (In re Mullins)*, 2021 WL 2679137, at *6 (10th Cir. BAP June 30, 2021) (citing *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002)).

[31] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[32] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (internal quotations omitted).

[33] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 913 (10th Cir. BAP 2020); *Via Christi Reg. Med. Center v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. Sept. 8, 2000).

[34] *In re Smith*, 618 B.R. at 913.

[35] *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at *7 (10th Cir. July 12, 2022) (citing *In re Smith*, 618 B.R. at 913)).

[36] *In re Smith*, 618 B.R. at 919; see *In re Tsamasfyros*, 940 F.3d 605, 607 (10th Cir. BAP. 1991).

[37] *Id.* (citing *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993)).

necessary for a § 523(a)(6) claim.[38]  Indeed, the debtor's "knowing conduct" necessarily found as part of a state court judgment for theft is "precisely the conduct required to prove the willfulness prong of § 523(a)(6)."[39]  Similarly, the malice prong of § 523(a)(6) is satisfied by a court's finding of liability for civil theft under Colo. Rev. Stat. § 18-4-405 because malice may be presumed by the conduct necessary to find the debtor liable under that statute.[40]

The findings in the Summary Judgment Order match those necessary to prevail under § 523(a)(6).  Moody's conduct was "willful" because he retained possession of the RPT Project funds all while knowing he was no longer authorized to do so.[41]  The malice prong is satisfied by the State Court's finding that Moody's knowing retention of the RPT Project funds makes him liable for civil theft pursuant to Colo. Rev. Stat. § 18-4-405.[42]  As a result of Moody's committing theft of the RPT Project Funds, All Terrain suffered damages.[43]  Because the findings of the Summary Judgment Order are the same as those necessary to find a debt nondischargeable for willful and malicious conduct, the Summary Judgment Order has a preclusive effect on this claim, and All Terrain's judgment against Moody for civil theft is also nondischargeable under § 523(a)(6).

While the Summary Judgment Order has a preclusive effect as to All Terrain's claims under § 523(a)(4) and (a)(6), the same cannot be said for its § 523(a)(2)(A) claim, which is premised on All Terrain's breach of contract claim.  While the State Court found in favor of All Terrain on its breach of contract claim, it made no findings as to that claim the Court could analyze to determine whether the elements of § 523(a)(2)(A) have been satisfied.  Therefore, the Court will address the 523(a)(2)(A) claim apart from collateral estoppel.

---

[38] *C-Ball Ventures, LLC v. Oltmann (In re Oltmann)*, 505 B.R. 311, 317 (Bankr. D. Colo. 2014); see *In re Rinker*, 676 B.R. 426, 443 (Bankr. D. Colo. 2025) (quoting *In re Oltmann*, 505 B.R. at 317) ("Generally, Colorado state court theft judgments may be afforded collateral estoppel effect in subsequent Section 523(a)(6) cases.").

[39] *In re Oltmann*, 505 B.R. at 317.

[40] *Id.* at 317-18 (holding that county court's finding that defendant's conduct satisfied the elements of theft and awarding of punitive treble damages under Colorado's civil theft statute gave rise to the presumption of malice.)

[41] ECF No. 15, Ex. D ("The plaintiff has met its burden to show that the advance payment of $13,855.60 was improperly and illegally withheld by Moody, who then committed civil theft by continuing to improperly hand onto and control these funds, thus knowingly using the plaintiff's money when Moody was no longer authorized to have it in his possession.")

[42] *In re Oltmann*, 505 B.R. at 318 ("The fact that the County Court found conduct that satisfied the elements of criminal theft and justified the awarding of punitive treble damages under the civil theft statute gives rise to the presumption of malice with respect to the Defendant's conduct."); ECF No. 15, Ex. D.

[43] ECF No. 15, Ex. D.

## C.      Section 523(a)(2)

All Terrain asserts its breach of contract claim is nondischargeable under § 523(a)(2)(A) because Moody enticed All Terrain to enter into the Agreement under false pretenses.  Although a claim for breach of contract does not require a finding of fraud under state law, a debt arising from such a claim may nonetheless be nondischargeable under § 523(a)(2)(A) if the requirements of § 523(a)(2) are met.[44] Under § 523(a)(2), debts obtained by "false pretenses, a false representation, or actual fraud" are nondischargeable.  To establish a non-dischargeable claim under § 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation; (2) with intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the false representation resulted in damages to the creditor.[45]  These elements must be proven by a preponderance of the evidence.[46]  "Because direct proof of intent is rarely available, scienter may be established through circumstantial evidence."[47]  Intent may be inferred where a debtor knowingly or recklessly makes false representations that he knows, or should know, will induce another to act.[48]  "A representation of the maker's own intent to do a particular thing is fraudulent if he does not have that intention at the time he makes the representation."[49]  In contrast, if at the time a debtor makes a promise he honestly intends to keep it but later changes his mind or fails to carry out his expressed intention, there has been no misrepresentation.[50]  "This is true even if there is no excuse for the subsequent breach.  A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions."[51]  In cases involving contractor-debtors, a plaintiff may prove fraud or misrepresentation in two ways: (1) by demonstrating that the debtor never intended to comply with the terms of the contract when he entered into it; or (2) by showing the debtor intentionally misrepresented a material fact or qualification when

---

[44] *In re Thompson*, 555 B.R. 1, 9 (10th Cir. BAP 2016) ("The Code, however, does not require that to except debt arising under state law from discharge under § 523(a)(2)(A) the claimant necessarily must prove fraud under state law. Claims established under state law on grounds other than fraud are not automatically precluded from qualifying for the exception to discharge under § 523(a)(2)(A).").

[45] *In re Bolling*, 600 B.R. 838, 848 (Bankr. D. Colo. 2019); *Fowler v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

[46] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

[47] *Santiago v. Hernandez (In re Hernandez)*, 452 B.R. 709, 720-21 (Bankr. N.D. Ill. 2011) (quoting *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996)).

[48] *Id.* at 721.

[49] *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (quoting Restatement (Second) of Torts § 530(1)) (quotations omitted).

[50] *Id.* at 787.

[51] *Id.* (quoting 4 *Collier on Bankruptcy* ¶ 523.08 [1][d], at 523-43) (quotations omitted).

soliciting or obtaining work.[52]  "When determining whether a contractor committed fraud in connection with a construction project, the question pivots on whether, during the negotiations, the contractor induced the property owner into signing the contract by making material false representations, like promising to obtain the necessary permits or overstating his qualifications."[53]  "Fraud does not result solely from substandard performance or a mere breach of the construction contract."[54]

In support of its § 523(a)(2)(A) claim, All Terrain asserts generally that Moody represented he was capable of performing the work in connection with the Agreement, the Lehigh Project, and the RPT Project, and that All Terrain relied on these representations.[55]  All Terrain also asserts that Moody knew these representations were false.[56]  However, All Terrain fails to identify specific misrepresentations that Moody knew were false at the time he solicited the work from All Terrain.  For example, All Terrain doesn't allege that Moody misrepresented his qualifications, or that he was licensed to perform certain work, or even that he was capable of obtaining the permits necessary for the RPT Project.  The fact that Moody was later unable to perform the work for the Lehigh Project satisfactorily or to obtain the permits for the RPT Project does not prove that he knowingly made false representations about his ability to perform when he originally solicited the work.  Therefore, the Court concludes All Terrain has not met its burden to find its breach of contract claim nondischargeable pursuant to § 523(a)(2)(A).

## D.    Amount of All Terrain's Nondischargeable Claim

The State Court awarded All Terrain a judgment in the total principal amount of $127,525.05.  This amount includes: (a) $41,566.80 for the civil theft claim; (b) $58,706.62 for the breach of contract claim; (c) $22,028.65 in attorney fees; (d) $3,352.68 in prejudgment interest; and (e) $1,880.30 in costs.[57]  The $41,566.80 awarded for All Terrain's civil theft claim is nondischargeable pursuant to § 523(a)(4) and (a)(6).  However, the $58,706.62 awarded for All Terrain's breach of contract claim will not be excepted from Moody's discharge for the reasons stated above.  Further, the attorney fees awarded as part of the State Court Judgment are also nondischargeable,

---

[52] *In re Stevens*, 647 B.R. 299, 325 (Bankr. E.D. Va. 2022).

[53] *Id.* at 326 (quoting *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 775 (Bankr. E.D. Va. 2012) (internal quotations omitted).

[54] *Id.* (internal quotations omitted).

[55] ECF No. 15, ¶¶ 48 & 49; ECF No. 15, Ex. B, ¶¶ 45 & 46.

[56] ECF No. 15, ¶¶9, 12, 14.

[57] ECF No. 18, Ex. 3, October 2, 2024, Order Granting All Terrain Ponds and Sprinklers' Motion for Default Judgment Against Defendant and its Motion for Entry of Judgment in Sum Certain, Bill of Costs, and Request for Attorney Fees. The damages awarded for the civil theft claim were trebled ("$13,855.60 in funds advanced for the RPT Project x 3).

as are the costs and prejudgment interest.[58]  Therefore, the amount of the State Court Judgment excepted from Moody's discharge is $66,948.33.

## CONCLUSION

For the reasons stated above, the COURT ORDERS the Motion is GRANTED. The State Court Judgment in the amount of $66,948.33 is excepted from Moody's discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).  A separate judgment shall enter.

THE COURT FURTHER ORDERS that, pursuant to Fed. R. Civ. P. 54(b) (incorporated by Fed. R. Bankr. P. 7054) all claims in this proceeding have been adjudicated, this Order is final, and there is no just reason for delay.

Dated May 19, 2026                                  BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court

---

[58] *NF Clean, Prestacao De Servicos v. Kakal (In re Kakal)*, 596 B.R. 335, 338-39 (Bankr. S.D. Tex. 2019) ("When a bankruptcy court concludes that a particular judgment debt is non-dischargeable, attorney's fees awarded by the state court under an enforceable contract or state statute in connection with that non-dischargeable debt will also be deemed non-dischargeable."); *In re Cobe*, 229 B.R. 15, 18 (9th Cir. BAP 1998) (finding a creditor is entitled to include prejudgment interest as part of its nondischargeability judgment in actions brought under § 523(a)(2) and (a)(4)).